# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

|  |  |  |
|---|---|---|
| DARRELL THEURER, | : | Case No. 3:14-cv-361 |
|  | : |  |
| Plaintiff, | : | District Judge Walter Herbert Rice |
|  | : |  |
| vs. | : | Chief Magistrate Judge Sharon L. Ovington |
|  | : |  |
| COMMISSIONER OF SOCIAL | : |  |
| SECURITY, | : |  |
|  | : |  |
| Defendant. | : |  |

# REPORT AND RECOMMENDATION[1]

This Social Security disability benefits appeal is before the Court on Plaintiff's statement of errors (Doc. 8), the Commissioner's memorandum in opposition (Doc. 12), Plaintiff's reply (Doc. 13), the administrative record (Docs. 6 and 7), and the record as a whole. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore not entitled to disability insurance benefits ("DIB") nor Supplemental Security Income ("SSI"). (*See* Doc. 6, PageID # 67-83 ("ALJ's decision")).

## I. INTRODUCTION

On August 2, 2010, Plaintiff Darrell Theurer protectively filed an application for a period of disability and DIB, as well as SSI, alleging disability beginning December 14, 2009. (Doc. 6, PageID # 67). Plaintiff alleged he was unable to work due to the

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

following impairments: severe depression, anxiety, diabetes, neuropathy, sleep disorder, slow reading, difficulty comprehending, and color blindness. (*Id.* at 371). His claim was denied initially and on reconsideration. (*Id.* at 67).

Plaintiff requested a hearing before an ALJ, which was held on April 2, 2013.[2] (Doc. 6, PageID # 67). Plaintiff and a vocational expert ("VE") testified, with Plaintiff's counsel in attendance. (*Id.*)

On June 26, 2013, ALJ Amelia G. Lombardo issued an unfavorable decision, finding that Plaintiff had not been under a disability as defined in the Social Security Act, and was therefore not entitled to a period of disability, DIB and SSI. (*Id.* at 64). Although finding that Plaintiff was not capable of performing his past relevant work, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to perform a reduced range of light work. (*Id.* at 77). Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that there were a significant number of jobs in the national and regional economy that Plaintiff could perform. (*Id.* at 82-83). Therefore, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 83).

The decision became final and appealable on September 4, 2014, when the Appeals Council denied Plaintiff's request for review. (*Id*. at 56-58). Plaintiff then

---

[2] Plaintiff's hearing was initially scheduled for October 26, 2012. (Doc. 6, PageID # 67). However, Plaintiff appeared without a representative and it was decided that the hearing should be postponed so Plaintiff could consider securing counsel and additional evidence could be obtained. (*Id.*) The hearing was reconvened on April 2, 2013. (*Id.*)

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

properly commenced this action for judicial review of the Commissioner's decision

pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

At the time of the hearing, Plaintiff was 41 years old.  (Doc. 6, PageID # 82).  He

completed high school (through special education classes) in 1991, and had some training

in masonry work shortly thereafter.  (*Id.* at 372).  Plaintiff had no other specialized job

training, and had not attended any trade or vocational schools.  (*Id.*)  The ALJ determined

that Plaintiff had past relevant work as a construction worker, bicycle assembler, stock

clerk, building maintenance laborer, and lawn and garden machine assembler.  (*Id.* at 81-

82).  However, based on the VE's testimony, the ALJ found that Plaintiff's functional

limitations precluded him from returning to his past relevant work.  (*Id.*)

The ALJ's "Findings," which represent the rationale of her decision, are as

follows:

1. The claimant meets the Title II disability-insured status requirements of the Social Security Act through September 30, 2015.

2. The claimant has not engaged in substantial gainful activity since December 14, 2009, the alleged disability onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: mild degenerative disc disease of the cervical spine, residuals of injuries (multiple fractures) suffered in a bicycle/motor vehicle collision, diabetes mellitus, residual effects of remote metacarpal injury and more recent metacarpal fracture, depression, anxiety, borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform light work as defined at 20 CFR 404.1567(b) and 416.967(b) subject to the following additional limitations: unskilled low-stress tasks (i.e., no assembly-line production quotas or fast-paced duties); no more than frequent fingering and handling with the right dominant hand.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 23, 1971. At age 41 he is classified as a "younger individual" for Social Security purposes (20 CFR 404.1563 and 416.963).

8. The claimant has a high school education (20 CFR 404.1564 and 416.964).

9. The claimant does not have "transferable" work skills within the meaning of the Social Security Act (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant was not disabled, as defined in the Social Security Act, from December 14, 2009 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Doc. 6, PageID ## 70-83). In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to a period of disability, DIB, or SSI. (*Id.* at 83).

On appeal, Plaintiff argues that: (1) the ALJ failed to follow the Social Security Administration's own regulatory requirements in weighing the medical source opinions which therefore denotes a lack of substantial evidence and an error as a matter of law; and (2) the ALJ failed to properly evaluate Plaintiff's credibility, pain, and symptoms,

4

pursuant to the Social Security Administration's own rulings and regulations and Sixth Circuit case law.  (Doc. 8).

## II.  STANDARD OF REVIEW

The Court's inquiry on appeal is limited to whether the ALJ's non-disability finding is supported by substantial evidence and whether the correct legal standard was applied.  42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).  Substantial evidence is more than a "mere scintilla" but less than a preponderance of the evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").  In reviewing the ALJ's decision, the district court must look to the record as a whole and may not base its decision on one piece of evidence while disregarding all other relevant evidence.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  Even if the district court "might have reached a contrary conclusion of fact, the [ALJ's] decision must be affirmed so long as it is supported by substantial evidence."  *Kyle*, 609 F.3d at 854-855 (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604-05 (6th Cir. 2009)).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, he must present sufficient evidence to show that, during the relevant time period, he was unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments, which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A).

5

## III.  BACKGROUND

The relevant facts, as reflected in the record, are as follow:[4]

### A.  Relevant Medical Evidence

#### 1.  *Alan Boerger, Ph.D.*

Plaintiff was examined by **non-treating** psychologist, Alan Boerger, Ph.D., at the request of the Bureau of Disability Determination ("BDD") on October 2, 2010.  (Doc. 6, PageID ## 496-503).  Dr. Boerger recorded that Plaintiff had experienced difficulties as a child, including being diagnosed with diabetes and suffering possible mental abuse from his mother and father.  (*Id*. at 496).  Dr. Boerger further noted that Plaintiff was homeless at the time of the examination.  (*Id*.)

Dr. Boerger indicated that Plaintiff has difficulty with reading, math, and was unable to perform Serial 7s.  (*Id*. at 497, 499).  Plaintiff also showed difficulties with comprehension, such as his inability to understand the phrase, "Don't count your chickens before they hatch."  (*Id*. at 499).  Dr. Boerger opined that Plaintiff "seemed to be of borderline range level intellectual abilities," although his full scale IQ of 67 "falls more than 2 standard deviations below the mean and is at the upper end of the range of mild mental retardation."  (*Id*. at 500).  Dr. Boerger listed Anxiety Disorder (not otherwise specified) and Dysthymic Disorder for Plaintiff's diagnosis.  (*Id*. at 501).

---

[4] Having thoroughly reviewed the administrative record, the Court finds that a detailed recitation of all facts in this case is unnecessary and, therefore, restricts its statement of the facts to those relevant to Plaintiff's alleged errors.  Specifically, as the ALJ's errors in the overall assessment regarding Plaintiff's mental health alone warrant remand, the Court excludes discussion of Plaintiff's physical impairments.

### 2. *Vicki Warren, Ph.D.*

**Non-examining** state agency psychologist, Vicki Warren, Ph.D., conducted an initial review of the record on January 15, 2011 at the request of the BDD.  (Doc. 6, PageID ## 151-52).  Dr. Warren opined that Plaintiff's "BIF [borderline intellectual functioning] limits [him] to the performance of simple and moderately complex tasks, which do not require long periods of concentration."  (*Id.* at 151).  Further, Dr. Warren opined that Plaintiff was moderately limited in in his ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others.[5]  (*Id.* at 152).  Accordingly, Dr. Warren noted that any workplace changes must be infrequent and easily explained.  (*Id.*)

### 3. *Karen Steiger, Ph.D.*

On May 3, 2011, **non-examining** state agency psychologist, Karen Steiger, Ph.D., reviewed the record on reconsideration.  (*Id.* at 182-83).  Dr. Steiger's opinion was identical to Dr. Warren's initial review.  (*Id.*)

### 4. *Mental Health Emergencies*

Plaintiff presented to the emergency room at Wayne Hospital on July 12, 2011, with complaints of chronic pain in his knees, hips, and lower back; suicidal thoughts; and

---

[5] *See* Social Security Ruling 85-15, 1985 WL 56857, at * 4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base").

depression, stating he "just wanted to end [his] life."  (Doc. 7, PageID ## 1187, 1189).

He advised the hospital staff that no amount of medicine was going to help.  (*Id*. at 1191).

Plaintiff again presented to the Wayne Hospital emergency room on December 6,

2012 with complaints of depression, anxiety, and suicidal thoughts.  (*Id*. at 1338-1386).

He reported feeling hopeless, helpless, not sleeping, having difficulty functioning, and

feeling overwhelmed.  (*Id*. at 1369).  He stated he was sleeping less than four hours each

night.  (*Id*.)  He also reported significant mood swings, anger, agitation, and irritability.

(*Id*.)  It was further noted that Plaintiff's mother had obtained a restraining order against

him, as he had allegedly threatened to kill her.  (*Id*.)  Plaintiff was admitted to the hospital

and placed on observation after he expressed fear that he was losing control and that he

would hurt himself and others.  (*Id*.)  He was diagnosed with Major Depression,

Recurrent and Severe.  (*Id*. at 1370).  Plaintiff was discharged on December 11, 2012,

after it was determined that through medication and therapy, Plaintiff's mood had

stabilized and he no longer posed a threat to himself or others.  (*Id*.)

### 5.  *David Lauffenburger, Ph.D.*

**Treating source**, David Lauffenburger, Ph.D., of Darke County Mental Health,

began treating Plaintiff on December 5, 2011 and continued seeing him regularly on a

weekly to bi-weekly basis.  (Doc. 7, PageID ## 1438).  Dr. Lauffenburger completed a

Mental Impairment Questionnaire for Plaintiff on January 29, 2013.  (*Id*. at 1438-1440).

Dr. Lauffenburger diagnosed Plaintiff with severe Major Depressive Disorder.  (*Id*. at

1438).  He identified Plaintiff's signs and symptoms as sleep disturbance, mood

disturbances, anhedonia (pervasive loss of interests), psychomotor agitation or

8

retardation, and suicidal ideation or attempts. (*Id*.) He noted that Plaintiff "periodically has become depressed to the point of suicidal thoughts and need for hospitalization." (*Id*. at 1439).

Dr. Lauffenburger opined that Plaintiff's impairments have lasted or can be expected to last at least 12 months. (*Id*.) Dr. Lauffenburger further noted that Plaintiff's impairments would cause him to be absent from work more than three times a month, and that, on average, he would be distracted by his psychological symptoms during half of an eight hour work day. (*Id*. at 1440). Dr. Lauffenburger concluded that Plaintiff's mental impairment caused him to experience a moderate degree of: restrictions of daily living activities, difficulty in maintaining social functioning, and episodes of deterioration or decompensation in work; and a marked degree of deficiency in his concentration, persistence, or pace, resulting in failure to complete tasks in a timely manner. (*Id*.)

### 6. *Irfan Dahar, M.D.*

**Treating source**, psychiatrist Irfan Dahar, M.D., of Darke County Mental Health, began treating Plaintiff in July 2011and continued seeing him regularly every six to eight weeks. (Doc. 6, PageID # 894). In addition to providing extensive treatment records, Dr. Dahar completed a Mental Impairment Questionnaire on February 4, 2013. (*Id.* at 894-896). Dr. Dahar diagnosed Plaintiff with Recurrent Depression, Severe. (*Id.* at 894). He identified Plaintiff's signs and symptoms as poor memory, sleep disturbance, mood disturbances, anhedonia or pervasive loss of interests, difficulty thinking or concentrating, and suicidal ideation or attempts. (*Id*.) He also noted that Plaintiff was compliant with the prescribed medication. (*Id*. at 895).

9

Dr. Dahar opined that Plaintiff's mental impairments have lasted or can be expected to last at least 12 months. (*Id*.) Dr. Dahar further noted that Plaintiff's impairments would cause him to be absent from work more than three times a month and that, on average, he would be distracted by his psychological symptoms during half of an eight hour work day. (*Id*. at 896). Dr. Dahar concluded that Plaintiff's mental impairment caused him to experience a moderate degree of: restrictions of daily living activities, difficulty in maintaining social functioning, and episodes of deterioration or decompensation in work; and a marked degree of deficiency in his concentration, persistence, or pace, resulting in failure to complete tasks in a timely manner. (*Id*.)

## B. The Administrative Hearing

### 1. Plaintiff's Testimony

Plaintiff testified that he was living in a first floor apartment; however, he was previously homeless for an extended period of time and had been living outside, with others, or wherever he "could find or get to get through the night or day." (Doc. 6, PageID # 98). Eventually, his mental health provider helped him find shelter. (*Id*.) Richard Baker, his mental health case worker, drove Plaintiff to the hearing. (*Id*.)

Plaintiff testified to past work framing houses and stated that he worked at Wal-Mart. (*Id*. at 99). He was let go from Wal-Mart "because of the economy" around 2009. (*Id*. at 100). He also tried to work temporary jobs in 2010, but was unsuccessful in maintaining employment. (*Id*.) Plaintiff testified that he injured his dominant right-hand while working at Wal-Mart and now can only use his first three fingers, making it difficult to grab objects or open things. (*Id*. at 104).

10

In 2012, Plaintiff was hit by a car while riding his bicycle. (*Id*. at 105). The accident fractured his legs and broke four ribs. (*Id*.) He testified that his left side "hurts like crazy." (*Id*. at 106).

Plaintiff has also been diabetic since the age of three and takes insulin for his diabetes, although he still experiences symptoms such as fluctuating blood sugar levels. (*Id*. at 114-115). These symptoms have caused him to seek treatment at the emergency room. (*Id*. at 115). Further, Plaintiff suffers from diabetic retinopathy, which has caused 50-75% blindness in his right eye. (*Id*. at 105). Plaintiff wears prescription eyeglasses, but is still unable to see well out of his right eye. (*Id*.)

As to mental impairments, Plaintiff testified that he receives mental health treatment at Darke County Mental Health. (*Id*.) He sees his psychologist, Dr. Lauffenburger, once a week when he is having problems. (*Id*. at 116). He also sees his psychiatrist, Dr. Dahar, once every six weeks. (*Id*.) Plaintiff testified that he has trouble concentrating due to his psychological symptoms, noting that concentration is "very hard to do even with a movie or even a book or even on a computer and stuff." (*Id*. at 119). He stated that he was in special education classes in all subjects when he attended school. (*Id*. at 112). Plaintiff relies on his case manager to help him fill out forms, as he has difficulty figuring them out. (*Id*. at 113). Plaintiff sought assistance from the Bureau of Vocational Rehabilitation ("BVR") to help him find a job; however, after performing an evaluation, the BVR were unable to place him in any position. (*Id*. at 115). Plaintiff stated that his inability to find a job despite his best efforts makes it harder for him, as it worsens his depression, and hurts his feelings. (*Id*. at 120).

A typical day for Plaintiff involves getting up and taking a shower to loosen up his muscles.  (*Id*. at 107).  He then eats breakfast and reads the "24 hour book," which is a book from Alcoholics Anonymous ("AA") that helps him through the day.  (*Id*. at 108).  He attends AA meetings about six times per week.  (*Id*.)  He walks to his meetings.  (*Id*.)  Plaintiff also reads his Bible and attends church on Sundays.  (*Id*. at 108-109).  He also volunteers to clean at his church when he can.  (*Id*. at 111).

### *2.  The VE's Testimony*

Vocational expert Eric Pruitt testified that <u>an individual who suffered from psychological problems that would cause him to be off-task as often as half the work day would not be able to maintain full-time employment at any exertional level</u>.  (*Id.* at 128).  He also testified that an individual limited to sedentary work with the restrictions of only occasional near acuity; no binocular vision; only occasional forceful gripping on the right dominant hand; only occasional contact with coworkers and supervisors; and unskilled low-stress work, would not be able to perform even unskilled work.  (*Id.*)

### C.  The ALJ's Decision

As to mental impairments, the ALJ relied exclusively on the opinions of **non-examining** BDD reviewing psychologists, Drs. Warren and Steiger, in determining that Plaintiff was not under a disability as defined by the Social Security Regulations and, therefore, not entitled to benefits.

## IV.  ANALYSIS

## A.  The ALJ Erred in Weighing Medical Source Opinions

12

Plaintiff argues that the ALJ failed to adhere to the regulatory requirements for weighing medical opinions and, further, that she erred in disregarding the opinions of his treating physicians, Dr. Lauffenburger and Dr. Dahar.

"Regardless of its source, [the ALJ must] evaluate every medical opinion [she] receive[s]," in order to determine whether a claimant is disabled.  20 C.F.R. § 1527(b), (c).  However, "not all medical sources need be treated equally." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal quotation marks and citations omitted).  The Regulations require that a treating doctor's opinion be given "controlling weight" as long as it is "well-supported" by objective evidence and is "not inconsistent with the other substantial evidence."  20 C.F.R. § 1527(d)(2).  Greater weight is generally given to the opinions of treating sources because treating physicians can provide a detailed, longitudinal picture of a claimant's medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from reports of individual examinations (*e.g.*, consultative examinations) or from objective findings alone.  *Id.*  Accordingly, less weight is given to non-treating and, certainly, non-examining sources.  *Id.*

However, "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).  "If the opinion of a treating source is not accorded controlling weight, an ALJ

must apply certain factors – namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (discussing 20 C.F.R. § 1527(d)(2)).

If, upon consideration of the § 1527 factors, the ALJ rejects the opinion of a treating physician, she must articulate "good reasons" for doing so. *Wilson*, 378 F.3d at 544. "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases … [but] also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* at 544-45 (internal quotation marks and citations omitted). In particular, the ALJ's decision must articulate the "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). Notably, the ALJ's duty to properly articulate 'good reasons' is so significant that, "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions **denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record**." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (emphasis added).

14

Here, the ALJ determined that the opinions of Plaintiff's treating physicians, David Lauffenburger, Ph.D. and Irfan Dahar, M.D., "cannot be given controlling or even deferential weight (and are, in fact, entitled to no weight whatsoever)."  (Doc. 6, PageID # 74).

In discussing the medical opinions of Plaintiff's treating physicians, the ALJ states that Dr. Lauffenburger diagnosed Plaintiff with major depressive disorder and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 60.[6]  (Doc. 6, PageID # 72).  The ALJ made a particular point of noting that a GAF score of 60, while <u>actually indicative of moderately severe psychological symptoms and social functioning</u>, is also technically at the borderline of 'mild' symptoms.[7]  (*Id.*)  The ALJ acknowledged that Dr. Lauffenburger believed Plaintiff "might miss work more than three times per month and that he might be distracted by psychological symptoms about ½ of any given work day (Exhibit 54F at 3)."  (*Id.*)  Further, the ALJ notes that according to Dr. Lauffenburger, Plaintiff experiences '**marked**' deficiencies in concentration, persistence or pace; '**moderate**' restriction of activities of daily living; and '**moderate**' difficulty in

---

[6] A GAF score is used to report a clinician's judgment as to a patient's overall level of psychological, social, and occupational functioning.  <u>DSM-IV-TR Classification Appendix</u>, available at:  http://wps.prenhall.com/wps/media/objects/219/225111/CD_DSMIV.pdf.  The GAF scale ranges from 0 to 100, divided into ten-point increments.  *Id.*  A lower GAF score is indicative of greater symptom severity and difficulty functioning.  *Id.*

[7] A GAF score between 51 and 60 indicates "moderate" symptoms.  <u>DSM-IV-TR</u>.  The DSM-IV-TR states that a GAF score of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  *Id.*

maintaining social functioning.  (*Id.*)  The ALJ also states that Dr. Lauffenburger "characterized [Plaintiff's] prognosis as 'good.'"  (*Id.*)

Next, the ALJ addresses the opinion of Plaintiff's treating physician, Dr. Dahar, by stating only that "[c]uriously, [Dr. Dahar], provided identical conclusions to those of Dr. Lauffenburger (compare Exhibits 21F and 54F)."  (Doc. 6, PageID # 72).  Notably, **the ALJ's observation is entirely inaccurate**.[8]  The ALJ then moves on to summarizing the opinions of BDD examining psychologist Alan Boerger, Ph.D., and evaluating psychologists Vicki Warren, Ph.D., and Karen Steiger, Ph.D.  (*Id.* at 72-73).

As to Dr. Boerger, who examined Plaintiff at the request of the BDD, the ALJ notes that he diagnosed Plaintiff with anxiety disorder (not otherwise specified), dysthymic disorder, and borderline intellectual functioning, and ultimately assigned Plaintiff a **GAF score of 55**.  (Doc. 6, PageID # 72).  Further, the ALJ states that Dr. Boerger opined that Plaintiff's ability to relate to others is '**mildly**' impaired; ability to understand and follow instructions is '**moderately**' impaired; ability to maintain attention for simple repetitive tasks is '**moderately**' impaired; and ability to cope with stress is 'mildly' impaired.  (*Id.* at 73).

Finally, as to Drs. Warren and Steiger, who evaluated Plaintiff at the request of the BDD, the ALJ states that both doctors opined that Plaintiff had a "severe mental

---

[8] For example, Dr. Dahar notes Plaintiff's "Highest GAF past year" as 50, whereas Dr. Lauffenburger opines it was 60.  (*Compare* Doc. 6, PageID # 894, *with* Doc. 7, PageID # 1438).  Additionally, in listing Plaintiff's "signs and symptoms," the doctors agree in most areas, but differ in their opinions as to "poor memory" and "psychomotor agitation or retardation." (*Id.*)  **Most significantly**, Dr. Lauffenburger lists Plaintiff's prognosis as "good," whereas Dr. Dahar states that it is "fair."  (*Compare* Doc. 6, PageID # 895, *with* Doc. 7, PageID # 1439).

impairment." (Doc. 6, PageID # 73). Further, both Drs. Warren and Steiger found that Plaintiff suffered from '**mild**' limitation in his ability to maintain social functioning; '**moderate**' limitation in his ability to maintain concentration, persistence, or pace; and that he did not experience repeated episodes of psychological decompensation of extended duration in the relevant past.[9] (*Id.* at 73).

Significantly, the ALJ acknowledges that "**[i]f credible, <u>the degree of mental limitation described by Dr. Lauffenburger and Dr. Dahar would lead to the conclusion that [Plaintiff] is unable to engage in competitive employment</u>**." (Doc. 6, PageID # 73) (emphasis added). However, the ALJ quickly discredits the treating source opinions, stating that "when viewed within the context of the entire record, the degree of limitation described by Dr. Lauffenburger and Dr. Dahar is found to be quite excessive and is given no weight." (*Id.*)

In electing to completely discredit Plaintiff's treating sources, the ALJ stated that their "conclusions are purely speculative and viewed with considerable skepticism (especially given the fact that both assessments were done at the behest of [Plaintiff's] counsel and were purportedly completed separately and on different dates [days apart] but are identical)."[10] (*Id.* at 74). Rather than even entertaining the notion that any

---

[9] Notably, the ALJ showed no concern over the <u>**identical**</u> findings of the BDD evaluators, Drs. Warren and Steiger, despite her absolute disbelief in the validity of Plaintiff's treating source opinions merely due to their *similarity*.

[10] The ALJ did not take issue with the evaluations at the **State agency's request**, despite her grave skepticism in the treating sources' Questionnaires provided at Plaintiff's counsel's request. Further, the ALJ failed to consider that, regardless of who elicited the Questionnaire, the opining doctors treated Plaintiff on a regular and frequent basis for over a year.

similarity in their opinions is, in fact, *supportive* of their individual conclusions, the ALJ

baselessly states that "[t]he extent of impairment described could **only** be based on

uncritical acceptance of [Plaintiff's] subjective complaints."  (*Id.*) (Emphasis added).

The ALJ claims that Drs. Lauffenburger and Dahar's opinions are "neither well

supported by medically acceptable clinical and laboratory diagnostic techniques nor

consistent with other substantial evidence in the case record."  (*Id.*)

As an initial matter, it is well-established that mental disorders are extremely

difficult to ascertain and verify with the same precision, documentation, and objective

testing available for physical conditions.  *Keeton v. Comm'r of Soc. Sec.*, 583 F.App'x

515, 526 (6th Cir. 2014) ("This Court has acknowledged the difficulty inherent in

proving psychological disabilities") (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121

(6th Cir. 1989) ("[A] psychiatric impairment is not as readily amenable to substantiation

by objective laboratory testing as a medical impairment")).  Accordingly:

> [W]hen mental illness is the basis of a disability claim, **clinical and
> laboratory data may consist of the diagnosis and observations of
> professionals** trained in the field of psychopathology.  The report of a
> psychiatrist should not be rejected simply because of the relative
> imprecision of the psychiatric methodology or the absence of substantial
> documentation, unless there are other reasons to question the diagnostic
> techniques.

*Blankenship*, 874 F.2d at 1121 (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C.

Cir. 1987)) (emphasis added); *see Warford v. Astrue*, No. 09-52, WL 3190756, at *6

(E.D. Ky. Aug. 11, 2010) (<u>finding interviews are an acceptable diagnostic technique in

the area of mental impairments</u>).  Thus, the Commissioner's argument, and the ALJ's

reasoning, that the absence of objective findings provided proper basis to completely reject Plaintiff's treating source opinions is wholly unpersuasive. (Doc. 12 at 8).

      The Commissioner also argues that the ALJ properly gave "no weight" to Plaintiff's treating source opinions because they are allegedly inconsistent with the record as a whole. (Doc. 12 at 8). In support, the Commissioner reiterates the argument that "the [treating source] doctors did not describe any significant symptoms or clinical findings that support their opinions." (*Id.* at 9). However, as set forth, *supra*, this argument is erroneous. Further, the treating sources listed clinical signs and symptoms observed throughout the course of Plaintiff's regular and frequent treatment, and the record is replete with treatment, emergency department, and hospital admission notes confirming the treating sources' opinions and reporting consistent signs and symptoms of mental impairment, including severe depression, suicidal thoughts, anxiety, panic attacks, insomnia, difficulty remaining alert and attentive, difficulty with cognitive and motor skills, difficulty with comprehension, difficulty with general daily functioning, and borderline mental retardation. (*See*, *e.g.,* Docs. 6 and 7, PageID ## 441-480, 581-590, 614-637, 772-786, 817-831, 848-865, 874, 889-892, 1338-1386, 1563-1586). Both the ALJ and Commissioner failed to properly consider the vast majority of the record evidence, instead focusing only on notes indicating that Plaintiff was doing "fairly well" or that his prognosis was "good."

      Further, Plaintiff correctly argues that the ALJ erroneously subjected the treating source opinions to high scrutiny, while applying <u>no scrutiny</u> to the state agency opinions, which is precisely the inverse of the analysis required under the Social Security Rules and

Regulations. 20 C.F.R. § 404.1527(c); Soc. Sec. Rul. No. 96-6p; *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 380 (6th Cir. 2013) ("the regulations do not allow the application of greater scrutiny to a treating source opinion as a means to justify giving such an opinion little weight. Indeed, they call for just the opposite").

Moreover, the ALJ's reliance on the non-examining source evaluations is rendered all the more problematic, given that their evaluations were conducted in January and May 2011, and therefore, **pre-date significant medical developments**, such as Plaintiff's mental breakdown and in-patient hospitalization at Darke County Mental Health, and Plaintiff's treating source opinions. "When an ALJ relies on a non-examining source who 'did not have the opportunity to review' later submitted medical evidence, especially when that evidence 'reflects ongoing treatment,' we generally require 'some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Brooks*, 531 F. App'x at 642 (quoting *Blakley*, 581 F.3d at 409)). However, here, the ALJ failed to give serious consideration to any subsequent medical evidence and, in fact, baselessly discredited and completely disregarded all such evidence.

Finally, even if the ALJ's decision to discredit treating source opinions was justified, the ALJ still failed to comply with the Social Security Administration's Rulings, which direct that:

> Adjudicators must remember that a finding that a treating source's medical opinion is not well-supported by medically acceptable clinical and laboratory techniques or is inconsistent with the other substantial evidence in the case record **means only that the opinion is not entitled to 'controlling weight,' <u>not that the opinion should be rejected.</u>** Treating

> source opinions are still entitled to deference and must be weighed using all
> of the factors provided in 20 C.F.R. § 404.1527…..

Soc. Sec. Rul. No. 96-2p (emphasis added). Generally, "a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Id.*; *see Rothgeb v. Comm'r of Soc. Sec.*, 626 F. Supp. 2d 797, 807 (S.D. Ohio 2009) ("the ALJ erred by applying only the standards to determine if [the treating source opinion] was entitled to controlling weight under the treating physician rule, but failing to apply the remaining factors required by the Regulations").

Thus, the ALJ's finding that the treating source opinions were not well-supported by medically acceptable clinical and laboratory techniques and inconsistent with the other substantial evidence in the case record only entitled her to decline controlling weight to those opinions, not to reject them entirely without further consideration. Accordingly, the ALJ's failure to continue to weigh each opinion as required by the SSA's Rulings and Regulations denotes a lack of substantial evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) ("[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence"). This error requires reversal.

In sum, the ALJ erred by failing to afford proper weight to Plaintiff's treating sources' opinions and instead relying upon the opinion of two non-examining psychologists, whose opinions pre-dated significant medical developments evidenced on the record. Further, the ALJ's determination that the treating sources' opinions are inconsistent with the record is not supported by substantial evidence. In fact, the

opinions of Drs. Lauffenburger and Dahar, who treated Plaintiff on a regular and frequent basis for well over one-year are well-supported by the record evidence and entitled to controlling weight.

Therefore, the ALJ's erred as a matter of law in her analysis of the medical evidence and the decision must be reversed.

### B.  The ALJ Erred in Assessing Plaintiff's Credibility

Next, Plaintiff argues that the ALJ's erred in finding that he is not credible.

In making a determination of disability, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider [the claimant's] credibility." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).[11]  The Court must "accord the ALJ's determination of credibility great weight and deference particularly since the ALJ has the opportunity … of observing [the claimant's] demeanor while testifying."  *Id.*  However, to appropriately evaluate the credibility of the claimant's statements, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."  Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

---

[11] Subjective complaints may "support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record."  *Jones*, 336 F.3d at 475-76.

The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight … [given] to the individual's statements and the reasons for that weight." *Id.*, at *2. Indeed, "'[i]t is more than merely 'helpful' for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.'" *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (quoting *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

"One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, at *5. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citations omitted). However, "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, at *1.

Here, the ALJ gave very little reasoning for discrediting Plaintiff regarding his mental impairments, other than mentioning his ability to perform basic, sporadic daily activities. (Doc. 6 at 80-81). Admittedly, daily activities, although not dispositive, may show that a claimant's symptoms are not as limiting as alleged. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(2)(i); *see Blacha v. Sec'y of Health & Human Servs.*, 927

23

F.2d 228, 231 (6th Cir. 1990) (an ALJ may "consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments"). However, there is a significant difference between doing minimal daily activities and performing work on a regular and continuing basis.[12] *See, e.g., Rogers,* 486 F.3d at 248-49 (the minimal daily functions of driving, cleaning an apartment, caring for pets, laundry, reading, exercising and watching the news are not comparable to typical work activities).

While it is not apparent what weight, if any, the ALJ gave Plaintiff's statements regarding his mental impairments, it is evident that the ALJ discredited his statements merely due to his ability to engage in daily activities such as going to church, reading, and going to Alcoholics Anonymous meetings.  (Doc. 6, PageID ## 80-81).  However, Plaintiff's ability to perform these limited activities is not substantial evidence that his symptoms are not disabling and does not support a finding that he can perform substantial gainful activity in a full-time work position.  *See* 20 C.F.R. § 404.1572(c) ("[g]enerally, we **do not** consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity") (emphasis added).  Thus, Plaintiff's ability to engage in therapeutic and rehabilitative activities such as reading the Bible, going to church weekly, or attended Alcoholics Anonymous meetings, does not equate to an ability to work forty-hours per

---

[12] "RFC is an assessment of an individual's ability to do **sustained** work-related physical and mental activities in a work setting **on a regular and continuing basis**."  SSR 96-8p, 1996 WL 374184, at *1 (emphasis added).  The term "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

week, and therefore is not a legitimate reason to discredit Plaintiff's allegations.  This is particularly true where, as here, Plaintiff's allegations are amply supported on the record. Indeed, the record reflects that Plaintiff has difficulty with many aspects of basic daily living.  Plaintiff's social worker described him as "basically a child in a man's body," and stated that she helps him do laundry, draw the proper amount of insulin, and even has to remind him to brush his teeth.  (Doc. 6, PageID ## 387, 392).

In short, the ALJ failed to properly evaluate and articulate Plaintiff's credibility regarding his symptoms and, therefore, her decision is not supported by substantial evidence.

## V.  REMAND FOR BENEFITS

Remand is appropriate when the ALJ's decision is not supported by substantial evidence or where the Commissioner failed to apply the correct legal criteria.  *Bowen*, 478 F3d at 746.  Moreover, even if supported by substantial evidence, remand is appropriate if the ALJ failed to follow the Administration's own regulations, thereby prejudicing a plaintiff on the merits or depriving a plaintiff of a substantial right.  *Id*. Remand may also be warranted when the ALJ failed to consider certain evidence, or when the ALJ failed to consider the combined effect of the plaintiff's impairments.  *Id.* at 747-50; *Gentry*, 741 F.3d at 725-26.

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).  Accordingly, where, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to

reverse and remand the matter for rehearing, or to reverse and order benefits be granted. 42 U.S.C. § 405(g).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is overwhelming, or where proof of disability is strong and opposing evidence is lacking in substance, such that remand would merely involve the presentation of cumulative evidence. *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985).

As fully recited here, and as evidenced by the medical record and the **credible** and **controlling** findings of treating mental health specialists, Drs. Lauffenburger and Dahar, Plaintiff is unable to engage in substantial gainful activity due to his numerous severe, medically determinable mental impairments. Further, in light of the ALJ's significant concession that "[i]f credible, the degree of mental limitation described by Dr. Lauffenburger and Dr. Dahar would lead to the conclusion that [Plaintiff] is unable to engage in competitive employment," there is no doubt that an award of benefits is appropriate in this case. (Doc. 6, PageID # 73). Proof of disability is overwhelming in the instant case, and remand will serve no purpose other than delay.

26

## VI.  CONCLUSION

Based upon the foregoing, the Court believes the decision of the Commissioner that Plaintiff Darrell Theurer was not entitled to supplemental security income and disability insurance benefits, is **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **REVERSED**; and that this matter should be **REMANDED** to the Commissioner for an **immediate AWARD of benefits** beginning December 14, 2009. That is, Plaintiff's Statement of Errors is well-taken and should be sustained.

Accordingly, the Court **RECOMMENDS** that:

1. The Commissioner's non-disability finding be **VACATED**;

2. Plaintiff Darrell Theurer's application for a period of disability and disability insurance benefits and supplemental security income, protectively filed on August 2, 2010, be **REMANDED** to the Social Security Administration **for an immediate AWARD of benefits** beginning December 14, 2009; and

3. This case be **CLOSED** on the docket of the Court.

Date:  12/17/15                                          *s/ Sharon L. Ovington*
                                                        Sharon L. Ovington
                                                        Chief United States Magistrate Judge

27

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).